We now have United States v. Jackson. Counsel, let me just make sure you're here. Mr. Calhoun, am I pronouncing that? How do you pronounce your last name? Calhoun is correct, Your Honor. Calhoun. Calhoun. Yes, sir. Okay. Yep. And Ms. Estes? Yes, Your Honor. I'm here. Okay. All right. So, Mr. Calhoun, you've reserved two minutes for rebuttal. So, I guess you've got eight minutes each, so you'll have six before you stop, and then you'll be $200. Okay, you may proceed. Yes, thank you. And I certainly wish the Court and my adversaries well today, too. As the Court knows from the briefs, this appeal involves a RICO sentencing issue involving downward departure, which ordinarily would be a pretty difficult business. And I think that's borne out in this case, where we contend that the District Court seems to have misunderstood its authority to downwardly depart and indicated in the record and in a written order some ambiguity in her thinking. At sentencing, and in the written order to which I refer, she said that a — the Court said that a downward departure was not appropriate. And that not appropriate is a phrase that keeps returning in the record, not only in the sentencing transcript, but also in the written order. However, in a situation that is presented by Mr. Jackson's case, a downward departure is perfectly appropriate. Court may ultimately decide — Excuse me, Mr. Calhoun. Isn't the language of the guideline that references this departure that a departure may be appropriate? Yes, and — So it may be, sometimes it may be, and sometimes it may not be. So why would you think that the judge is saying a departure is never appropriate under these circumstances, which would be inconsistent with the guideline language, rather than it's not appropriate in the facts of this case? Well, I guess it's based on the reasoning of the Court, to the extent it can be teased out of the record. The Court was concerned about an issue of double counting, which is under the Application Note 4 that I think Your Honor is referring to. That is always going to be present. And so — Well, yes, but it's always going to be present if you follow the kind of calculation that the But the judge actually made a different calculation, which has the effect of eliminating the double counting. So why would — Once that's the case, if you look at what the judge actually calculated as the guidelines, why would it be appropriate in this case to give a departure? Well, it would be appropriate if, again, going to the application note, if there was a — what's referred to as an anomalous — I hope I pronounced that — anomalous result was found by the Court. That swings the door open to the downward departure that would then be appropriate under this application note. Now, again, similar to the double counting, the District Court was very vague and ambiguous about anomalous — what she thought anomalous results meant, both in this case and, I suppose, generally. Unfortunately, it's a term that's not defined in the guidelines. So we don't have that — Well, it's defined in the dictionary. It means something that's unusual or out of the ordinary or incongruous in some way. Could you explain to me — you don't have to persuade me, of course, that it's a good departure. That's not the issue for us. It's a question of what the District Court meant. But it might help to understand what was the argument made to the judge that this was an anomalous result, that there was something out of the ordinary or incongruous about the calculation, the guideline calculation that she made, such that this kind of departure would be appropriate in this case. Well, that's really the problem, Your Honor, and that is the record is pretty much barren on arguments like what Your Honor is suggesting about what constitutes an anomalous result in this case. This is Judge Sullivan. Judge Schofield asked if anybody wanted to put anything on the record concerning whether you believe this is anomalous. So she understood what the ballgame was about, and if nobody took her up on the question, it doesn't mean that she didn't understand her authority, did it? Well, again, I'm not sure — If you have one more minute. — if defense counsel was prepared to address that issue, but I don't think that the issue of anomalous results was fleshed out well at all, and I think ultimately it led the court to this finding of inappropriateness, which I still maintain is more of a structural issue than one just limited to this case, because her findings about the double counting, as I indicated, that's going to apply in every single case, and if she finds it's inappropriate here, it's going to be inappropriate in every case. — Can I just ask about waiver? I mean, there is a plea agreement, there is a range, there's an express discussion at the guilty plea that the consequences of pleading guilty are that you don't get to appeal a sentence within this range. So how is that not a knowing, involuntary, intelligent waiver? — Well, I appreciate it. It's a good question. There is an appeal waiver in the plea agreement. It's our position that the waiver is not enforceable because in the guilty plea allocution, there's virtually nothing said about this waiver. The court asks Jackson if he understands that his ability to pursue an appeal might be constricted. I think that was the word that was used, but in terms of asking him about waiving his appeal and what that meant and trying to gain some assurance that Jackson understood and was willing to live with that, that really does not seem to have happened. I'm looking at page 53 of the record, and I think based on— — He indicated that he read the agreement, right? — Yes. Yes, he did read the agreement, and there's no question about that, but there was no inquiry or colloquy between Jackson and the court as to the meaning of this appeal waiver, which obviously is an important feature of the guilty plea agreement, but you just can't say based on the record that was made that it's a knowing waiver. There's just not enough there. So even though there is an appeal waiver and the sentence here would fall within that waiver, it's our contention that the waiver just is not enforceable, and that's why we're able to pursue this appeal. Otherwise, the sentence would have precluded any kind of appeal. — Right. Okay. Any other questions from the panel? — None for me. — All right. So you have two minutes for rebuttal. We'll now hear from Ms. Estes. — Good morning, Your Honors. May it please the Court. My name is Jordan Estes, and I represent the United States. This Court should affirm the judgment below, and I'll start first with the appeal waiver, which absolutely governs here. The defendant pled pursuant to a plea agreement, and the appellant waiver in the plea agreement is clear that he waived any attack on a sentence that's 137 months or lower. This was a 110-month sentence, and it falls squarely within that appellate waiver. Now, as to defendant's argument— — So, Ms. Estes, Judge Lynch here, just as a technical matter, if we were to agree with you about the appeal waiver, are you suggesting that the proper disposition is to dismiss the appeal in part, insofar as it relates to the sentence of incarceration, and affirm as to whatever the other issues on the supervised release? Is that what you're contending we should do? — Yes, Your Honor. I think that would be— — Okay. So not that we should affirm, but that we should dismiss in part, at least. — Yes, Your Honor. — Okay. — Thank you for that. — Just so I'm clear on the facts, I'm wondering—this is Judge Walker—was there any discussion at the time of the plea of the waiver in open court, or was it just in the agreement? — Yes, Your Honor. There was a question on it in open court. It's at page A53 of the record, and there the court asked the defendant if he is aware of text in the plea agreement that—and I'll quote this part—constricts your ability to appeal from or collaterally attack the judgment of conviction or sentence that might be imposed on you, including fines and periods of supervised release. And the defendant indicated that he understood. In addition to that, he was asked if he had reviewed the agreement with his attorney and if he understood the agreement. And as to both of those, he also indicated yes, he was aware and had reviewed it with his attorney. — Okay. Thank you. — And even putting aside the discussion at the plea, as to—I think it's clear from the government's perspective that this was a knowing and voluntary waiver, but the defendant never challenged whether the waiver was knowing and voluntary below. So because of that, any issue with the—with this appeal waiver would be subject to plain error review. And here, the defendant cannot establish if there was any sort of plain error because he has not indicated that he would have withdrawn his plea if there had been a more thorough allocation on the appeal waiver. In fact, here, he's only here attacking the sentence. He's not attacking the plea. And to move on to the argument that the decision to depart—I'll move on to the argument that the decision to depart is not reviewable. So defense counsel complained that the district court was vague at sentencing as to whether or not she could depart. But we would submit that on whether she had the authority to depart, she could not have been more clear. She expressly stated during the sentencing proceeding that, while I have the authority to depart, I declined to do so. And that's at 876 of the record. So we think on that point, it's very clear that the judge understood that she had the authority to depart. And any departure would have been unwarranted here in light of her calculation of the guidelines. The departure in the plea agreement was to account for the fact that the defendant had been previously sentenced for two cases related to the offense conduct. Those cases were also counted in his criminal history. Judge Schofield did not use those offenses in calculating the guidelines, and that resulted in a lower offense level calculation. So given that posture, her decision not to depart was appropriate. Unless there are any other questions, we respectfully request that the court dismiss the appeal because of the appellate waiver or otherwise affirm the judgment. I have one other question about the supervised release condition that the the plea waiver, at least as it was, I'm not looking right now at the agreement itself, but what the magistrate judge said to the defendant is that this would constrict his ability to appeal as to periods of supervised release. It didn't talk about conditions. Is that different than the language in the agreement? The language specifically refers to a sentence within the guidelines range. It does not specify what term of supervised release would be. Well, either way, the objection that he has is not to the length of the period of supervised release, but is to a condition. Now, I recognize that this condition, in fact, no longer applies based on a standing order of the district. But the question is, does the government really have any objection to our, if we agree with you on all the other points and were to affirm the conviction, does the government have any objection if the court modifies the actual judgment to strike that condition that no longer is applicable and affirms the judgment as modified? It's not uncommon that a defendant on supervised release gets permission to move to some other state and the supervision is transferred. And if somebody who's not familiar with the rules of the Southern District looks at this judgment, it says he's subject to a condition that, in fact, he's not subject to. So wouldn't it be appropriate for us just to fix that? Your Honor, we would have no objection to that. Okay. Thank you. So we should do that in every appeal? Your Honor, I think that was our concern. This one has been requested. Maybe we'll get a flock of such things in the future if we do this. But at least in this case, the defendant has explicitly requested that change. I take it you have no objection on the facts of this case? Correct, Your Honor. Okay. Thank you. We'll now hear Mr. Calhoun for two minutes of rebuttal. Yes. Thank you. And I certainly endorse the modification of the judgment, as the court suggested. I did want to touch on the appeal waiver one last time at the risk of overdoing the issue. The waiver requirement still has to be shown to be knowing and voluntary and competently entered. And without any questions being put to Mr. Jackson at the plea allocution regarding the appeal waiver, I just don't know how that finding comes about. And he did read the plea agreement. I mean, no specific question whether he read this particular provision or not. But nobody asked him if he understood what it meant or what the consequences of the appeal waiver would be to him. So it just doesn't seem like there's a record to support. Excuse me. You have one more minute. Okay. Thank you. A record to support a knowing waiver of what obviously is a very important right. This is under plain error review, though, is it not? That would be correct. There was no objection at the time. Yeah. That always raises the question about whether defense counsel may be laying in wait. In other words, let the judge make a lot of mistakes, and we'll see if we can deal with it on plain error later on. But maybe this is one of those prompts of the judge. But anyway, there we are. Yeah. I think it was a mistake that was honestly come by, but it still just isn't present in the record or in the allocution and perhaps should have been. In terms of Ms. Estes raised the issue of reviewability, the court was making reference to other additional upward or downward departure grounds. And that was the court's record to when she indicated her understanding of her 76 of the record. I still maintain that her view of the downward departure in the case before the court on the RICO sentencing was not clear. And I think her reasoning, both with respect to double counting and to anomalous results, was not well formed. And I think it may be a situation where it, similar to what was done in another case, I believe Galvez Falcone, where the case was remanded to fill out the record a little better. That may have been, that was deemed appropriate in that case. It may be appropriate in this case as well. And leave that to your honor's consideration. That's all I have. All right. Thank you very much, Mr. Calhoun. Thank you both. We will reserve decision.